1  McGREGOR W. SCOTT
   United States Attorney
2  KAREN A. ESCOBAR
   Assistant United States Attorney
3  2500 Tulare St., Suite 4401
   Fresno, CA  93721
4  Telephone: (559) 497-4000
   Facsimile: (559) 497-4575
5
   Attorneys for Plaintiff
6  United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 1:12-CR-00234 LJO |
|---|---|
| Plaintiff, | UNITED STATES' NOTICE OF REQUEST AND REQUEST TO SEAL DEFENDANT MORALES'S SECTION MOTION; DECLARATION OF AUSA ESCOBAR; [PROPOSED] ORDER |
| v. | |
| SAUL MORALES, | |
| Defendant. | |

Pursuant to Local Rule 141, the United States of America, by and through its counsel of record, hereby provides notice of its request to seal the Section 2255 motion of Defendant Morales, which identify by name a cooperating witness in this matter. Doc. 373.

DATED:    November 27, 2018.        Respectfully submitted,

McGREGOR W. SCOTT
United States Attorney

By:    /s/ Karen A. Escobar
KAREN A. ESCOBAR
Assistant United States Attorney

1

## UNITED STATES' REQUEST TO SEAL SECTION 2255 MOTION

The United States, by and through its undersigned counsel, hereby requests to seal Defendant Morales's Section 2255 motion (Doc. 373) and file in its place the attached redacted version, attached hereto, as set forth below.

1. Morales's motion references a cooperating witness (CW) in this case and labels CW as a snitch, informant, and "incentivized" witness.

2. The Ninth Circuit and this Court previously granted the government's request to redact CW's name from the record.

3. The safety and security of cooperating witnesses is paramount. *See*, *e.g.*, *Roviaro v. United States,* 353 U.S. 53, 60-62 (1957) (recognizing government's interest in protecting the confidentiality and security of its witnesses). Sealing Defendant Morales's motion is necessary to advance the compelling interest in protecting the confidential sources because revealing their status as government informants or cooperators would place them in danger. This danger is not speculative: a landmark 2016 study conducted by the Federal Judicial Center, surveying all district court judges (active and senior), United States Attorney's Offices, federal public defender and CJA district panel representative's offices, and chief probation and pretrial services offices, concluded that "the scope of the problem" of harm to cooperators "resulting from use of court documents to identify cooperators" is "substantial." Margaret S. Williams *et al.*, Survey of Harm to Cooperators: Final Report, Federal Judicial Center (2016) (herein, "FJC Final Report"), 31. With a 71% response rate that included information from all 94 federal judicial districts, the authors stated with "confiden[ce]" that the "robust and reliable" results of the study reporting "a substantial amount of harm" were "representative of the harm

experienced by witnesses and defendants/offenders." *Id*. at 5, 29–30. The study revealed at least 571 instances of harm or threat in the past three years out of 976 questionnaire respondents, a number described by the authors as the minimum number of instances and likely understated. *See id*. at 8. "Over 80% of the incidents reported involved threats of physical harm, a minimum number of 339 instances," most often against defendants and their friends and family. *Id*. at 9. These statistics and the study's observations support the notion that "[v]iolent retaliation against cooperators is a pervasive problem, of which cases where the perpetrators are identified and prosecuted only represent a fraction." Caren Myers Morrison, Privacy, Accountability, and the Cooperating Defendant: Towards A New Role for Internet Access to Court Records, 62 Vand. L. Rev. 921, 978 (Apr. 2009) (collecting cases of cooperators and their relatives being killed). Indeed, this same concern was echoed in a September 17, 2014 memorandum to all federal judges in which three committees of the Judicial Conference of the United States—the Court Administration and Case Management Committee, the Criminal Law Committee, and the Defender Services Committee—jointly advocated for the protection of government cooperators through omitting from court documents the cooperators' identities. *See* Memorandum from Committees on Court Administration and Case Management, Criminal Law, and Defender Services, to United States Judges (Sept. 17, 2014), 2 (herein "Joint Memorandum"). The committees noted the increased access to criminal case filings in prisons and the corresponding and growing concern that cooperation information in those filings is being used to harm cooperators who are incarcerated. *See id*. The committees described the significant interest in protecting government cooperators from intimidation or harm because of the risk of undermining the criminal justice system, as cooperators' information contributes significantly in federal criminal

prosecutions. *See id.* Therefore, the judicial committees recommend that all judges "continue to be mindful of the potential, but very real, consequences to government cooperators" of being named, and to consider taking additional precautions to ensure cooperators' safety by "avoiding the use of cooperators' names in . . . opinions and orders . . . or . . . consider taking additional actions . . . to obscure cooperators' identities." *Id.* Such cautionary advice is consistent with the common practice of the federal courts regarding at least temporary sealing of cooperator information. *See* Robert Timothy Reagan, Sealing Court Records and Proceedings: A Pocket Guide, Federal Judicial Center (2010), 13 ("It is common for courts to temporarily seal records of criminal defendants' cooperation in order to protect the confidentiality of ongoing investigations, and to either temporarily or permanently seal records of cooperation to protect the safety of the cooperating defendants and the defendants' families."); FJC Final Report at 28 ("Typically the procedures to protect defendants or witnesses included sealing, either as a general principle or by local rule . . ."). That is precisely the relief sought here.

4. Without sealing, the identified CW will face a substantial likelihood that CW's safety will be endangered. As articulated in the FJC Final Report, the top two sources reported for identifying defendants as cooperators were plea agreements/supplements and § 5K1.1 motions. *See* FJC Final Report at 13.

> [S]eventy-six respondents spoke about life in prison for cooperators . . . clearly noting a problem where there is an expectation of harm in prison for those who do cooperate or are unable to prove that they did not. These respondents consistently told a story of new inmates reporting to a specific individual (the "shot caller") in the prison and being required to provide their "paperwork" within a few weeks of coming to prison. These concerns prompted inmates to request their docket information, or (in the case of those who did cooperate) go as far as to request fake documents to protect them in prison.

*Id.* at 29. This articulation again reinforces the anecdotal reports that cooperators, upon being admitted to prison, "are assaulted. They are harassed pretty much on a daily basis.

4

Basically, what can be done? We can move them from prison to prison, but some of the intelligence . . . is passed on from institution to institution." Panel Four: Cooperation and Plea Agreements—Professors & Practitioners, 79 Fordham L. Rev. 65, 73–74 (Oct. 2010) (comments of Christopher Brown, Intelligence Operations Office of the Bureau of Prisons). Indeed, the pervasive violence reported against cooperators is likely understated. *See id.* at 74–75 ("[O]ne of the biggest problems that we face inside the prison is getting the inmates to actually come forward . . . [I]nmates know that once they are assaulted and they admit to being assaulted, they are going to be moved. They want to know how much time they are going to spend in the special housing unit under twenty-three-hour lockdown. They cooperated. They were assaulted, harassed. Now they are locked down for twenty-three hours a day, and they are going to be moved somewhere away from home."); FJC Final Report at 8 (positing that "actual incidence of harm and threat is higher" than statistic reported). Courts have repeatedly recognized this physical danger. *See United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1980) (allowing appellant to use pseudonym on appeal because "use of pseudonyms may prevent the dissemination of information within the prison with respect to appellant's cooperation with the Government"); *Defreitas v. Lindsay*, No. 08-CV-0052, 2008 WL 4850195, at *3 (E.D.N.Y. Nov. 6, 2008) ("[C]ooperators, sexual predators, former law enforcement officers, and terrorists are especially subjected to harassment and physical violence. While [the jail] can ordinarily find ways to mask the nature of an inmate's commitment to prevent this treatment, it simply cannot do so where the media has divulged as much information as they have [here]."). Members of the judiciary and prosecutors have echoed this reality as well. *See* Panel Four: Cooperation and Plea Agreements— Professors & Practitioners, 79 Fordham L. Rev. at 72 (statement of Barbara Sale,

Criminal Chief, U.S. Attorney's Office in the District of Maryland) ("[T]here is a continuing need to avoid identifying cooperating witnesses on paper. . . It is not simply that a person is endangered by cooperating in a particular case. It turns out that being a 'snitch' is a status that sticks to people throughout their incarcerations, and . . . puts them at risk."); Panel Five: Cooperation and Plea Agreements—Judges' Roundtable, 79 Fordham L. Rev. 85, 93 (Apr. 2010) (statements by judges of Southern and Eastern Districts of New York, Middle District of Florida, Eastern District of Pennsylvania, District of Connecticut, and Southern District of Mississippi) (discussing "whosarat.com" and problem of cooperator safety in penitentiaries, and outlining different ways districts combat identifying of cooperators, including non-electronic filing of sentencing motions, automatic sealing, and other means). If a substantial probability of endangering cooperators through revelation of their status as cooperators did not exist, it is difficult to discern the justification for the Joint Memorandum, which states that "cooperation information" found in "criminal case filings" is "being used to threaten or harm cooperating individuals, particularly those who are incarcerated," and urges that courts ameliorate that problem by attempting to "obscure cooperators' identities to ensure their safety." Joint Memorandum at 1.

5. The facts of this case only heighten the probability that, absent sealing, the CW will be harmed. The CW provided information and details about Morales's marijuana cultivation operation and testified against him at trial. This information, should it remain public, would put the CW at risk of harm.

6. Of course, sealing does not require particular past threats to the identified CW to seal Morales's motion.

> [I]n some circumstances[,] it might be within a district court's discretion to grant closure without evidence of a direct threat or other evidence corroborating a defendant's

6

subjective fears. The problem of retaliatory acts against those producing adverse testimony is especially acute in the context of criminal organizations, such as the one in which Doe allegedly participated. Hence, a district court in such a case might attribute the lack of a direct threat to the very confidentiality that the defendant or witness seeks to preserve. The district judge also might recognize that a direct threat may not always be forthcoming. In any event, the lack of a specific evidentiary configuration need not constrain the district court's discretion.

*United States v. Doe*, 63 F.3d 121, 129–30 (2d Cir. 1995) (citations omitted). The lack of a direct threat to the CW does not defeat the substantial probability that the CW will be placed in danger if the CW's cooperation is known. Closure in these circumstances is routine across the country. *See* Robert Timothy Reagan, *Sealing Court Records and Proceedings*, supra at 6 ("It is common for courts . . . to either temporarily or permanently seal records of cooperation to protect the safety of the cooperating defendants and the defendants' families."); FJC Final Report at 30 (citing chief district judges' reports that among measures taken by district courts is "sealing of docket entries . . . *sua sponte* . . . to shield cooperation information."). Even more systematic (*i.e.*, less narrowly tailored) approaches have been designed and approved by courts across the country. For example, on July 9, 2007, the judges of the Eastern District of Pennsylvania approved a protocol for all criminal cases mandating that all documents related to pleas, sentencing, and related orders would be designated with a generic title ("Plea Documents, Sentencing Documents and Judicial Documents"), regardless of their content, and available for inspection only in person at the Office of the Clerk, rather than online. *See* Protocol, E.D. Pa. (July 9, 2007), *available at* http://www.paed.uscourts.gov/documents/notices/notcrpro.pdf, (last visited January 29, 2016). This protocol was driven by an "immediate need to address problems engendered by an Internet website which uses publicly available information to identify and publicize

individuals suspected of cooperating with law enforcement agents appearing on the docket as accessed through the court's CM/ECF system." *Id.*

7. Finally, alternative methods for protecting the CW are impracticable. For example, 18 U.S.C. § 3521 provides for a witness relocation and protection program under the direction of the Attorney General. However, the limited number of participants (only 8,500 witnesses since 1970)[1] in that program, contrasted with the much larger group of cooperating defendants processed by the criminal justice system annually, indicates that such a method of protecting every cooperator would not be feasible given resource limitations. A different method might be to isolate cooperators within the prison system, but such an approach unduly penalizes cooperators and might have undesirable deterrent effects on prospective future cooperators. *See* Panel Four: Cooperation and Plea Agreements—Professors & Practitioners, 79 Fordham L. Rev. at 75 (discussing unintended penalty to cooperators who, for their safety, can be placed in "special housing unit under twenty-three-hour lockdown").

8. Accordingly, the United States respectfully requests that this Court seal Morales's Section 2255 motion and file in its place the attached redacted motion.

DATED: November 27, 2018.   Respectfully submitted,

                                                   KAREN A. ESCOBAR
                                                 United States Attorney

                                               /s/ Karen A. Escobar_____
                                               KAREN A. ESCOBAR
                                               Assistant United States Attorney

---

[1] See United States Marshals Service, "Witness Security Program," http://www.usmarshals.gov/witsec/ (last visited January 26, 2016).

## DECLARATION OF AUSA ESCOBAR

I, Karen A. Escobar, declare as follows:

1. I am an Assistant United States Attorney for the Eastern District of California and have been so employed for over twenty-eight years and over thirty-two years as a prosecutor. I am the Assistant U.S. Attorney assigned to this matter.

2. The statements contained in the government's request to seal Morales's Section 2255 motion is true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 27th day of November, 2018.

      /s/ Karen A. Escobar
KAREN A. ESCOBAR

## ORDER

Having considered the government's request to seal Defendant Morales's Section 2255 motion (Doc. 373), and having weighed the competing interests of the defendants, the public, and the cooperating witness,

IT IS ORDERED that Defendant Morales's motion found at docket entry 373 in this matter be SEALED and that the Clerk of Court file in its place the redacted version provided by the government.

IT IS SO ORDERED.

Dated: **November 28, 2018**      /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE